UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARK ZOBEL,

                Plaintiff,                      **Case No. 2:14-cv-2721**

    v.                                 **CHIEF JUDGE EDMUND A. SARGUS, JR.**

                                          **Magistrate Judge Terence P. Kemp**

**CONTECH ENTERPRISES, et al.,**

                Defendants.

## OPINION AND ORDER

        Plaintiff, a resident of Ohio, purchased stock in Defendant-corporation in November 2013.  Plaintiff claims Defendants procured his stock purchase by fraud and in violation of federal and state securities laws.  Defendants are the foreign-corporation and individual officers and shareholders thereof.  This matter is before the Court for consideration of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Insufficient Service of Process (ECF No. 6).  For the reasons that follow, Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part**.

## I. BACKGROUND

        Plaintiff initiated this lawsuit by filing a Complaint (the "Complaint" or "Compl.;" ECF No. 1) on December 23, 2014.  Plaintiff Mark Zobel ("Zobel") is an individual residing in Dublin, Ohio.  (Compl. ¶ 5.)  Defendant Contech Enterprises, Inc. ("Contech") is a privately and closely held corporation organized and existing under the laws of British Columbia, Canada, with offices in Victoria, British Columbia, and Grand Rapids, Michigan.  (*Id.* ¶ 6.)  Defendant Mark Grambart ("Grambart") is an individual residing in Victoria, British Columbia and was, at all relevant times, the President and Chief Executive Officer, a member of the Board of Directors, and a significant shareholder of Contech.  (*Id.* ¶ 7.)  Defendant Cary Gregory

("Gregory") is an individual residing in Gettysburg, Pennsylvania, and at all relevant times, was a member of the Board of Directors and a shareholder of Contech. (*Id*. ¶ 8.) Defendants Allen Spigelman ("Spigelman"), James Heppell ("Heppell"), John Zaplatynsky ("Zaplatynsky"), and Carol Burman ("Burman") are individuals residing outside of the United States, mainly in either Vancouver or Victoria, British Columbia, Canada, who were, at all relevant times, members of the Board of Directors and/or shareholders of Contech. (*Id*. ¶¶ 9-10.)

In August 2013, Grambart contacted Zobel in Ohio to solicit his interest in an open position with Contech as Vice President of Sales and Marketing. (*Id*. ¶ 13; Affidavit of Mark Zobel ("Zobel Aff.") ¶ 7, ECF No. 14-1.) During September 2013, over a series of telephone calls and email exchanges, which took place while Zobel was in Ohio, in addition to one face-to-face meeting in British Columbia, Canada, Grambart convinced Zobel to take the position and to purchase 643,750 shares of Contech common stock. (Compl. ¶ 13; Zobel Aff. ¶ 7.) In addition to his communications with Grambart, Zobel states—without identifying dates, locations or forms of communication—that he "spoke to Defendants Gregory and Spigelman about the company, its growth prospects and its current financial condition." (Zobel Aff. ¶ 15.) Grambart mailed a letter to Zobel in Ohio, dated October 15, 2013, on Contech letterhead, formally extending an offer to join Contech as Vice President of Sales and Marketing and offering the stock in exchange for a purchase price of $200,000. (Zobel Aff. Ex. 1.) Zobel signed the offer letter and mailed it back from his home in Ohio. (*Id*. ¶ 9.) On November 1, 2003, Zobel wire transferred $200,000 from his bank account in Columbus, Ohio to Contech's bank account in Victoria, British Columbia, Canada to purchase the 643,750 shares of stock. The stock certificate reflecting his ownership of that stock was mailed to his home in Dublin, Ohio. (*Id*. ¶ 10.)

Zobel claims that Contech's financial condition was repeatedly misrepresented to him both orally and in writing, in order to fraudulently induce him into purchasing the stock. (*Id.* ¶¶ 11-13.) He now alleges common law fraudulent inducement, violations of the Securities Exchange Act and Ohio statutory regulations on the sale of securities (O.R.C. § 1707 *et seq.*; "Ohio Blue Sky Laws") and seeks recission of the stock purchase as well as compensatory and punitive damages. (Compl. ¶¶ 24-64.)

## II. STANDARD

"To survive a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), a plaintiff must prove that jurisdiction is proper over each defendant individually." *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 354-56 (6th Cir. 2014). In deciding such a motion, a court may decide the motion "on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Serras v. First Tenn., Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989) (internal quotation marks omitted). Here, no party has requested further discovery or an evidentiary hearing, and this Court finds that neither is necessary for it to determine the issue at hand. Thus, the Court will decide this motion on the basis of affidavits alone. The plaintiff bears the burden of establishing the existence of personal jurisdiction. *Id.* However, as in the present case, where a Rule 12(b)(2) motion is decided solely on written submissions and affidavits, "the burden of the plaintiff is relatively slight," *Am. Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir.1988) (internal quotation marks omitted), and "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991).

Under the *prima facie* standard, although the plaintiff may not rest on pleadings alone in the face of the movant's evidence, the Court must "consider the pleadings and affidavits in the light most favorable to the plaintiff." *Serras v. First Tennessee Bank Nat. Ass'n,* 875 F.2d 1212, 1214 (6th Cir.1989). At the same time, however, a plaintiff's pleadings must still "have established with reasonable particularity those specific facts that support jurisdiction." *Palnik v. Westlake Entm't, Inc.,* 344 F. App'x 249, 251 (6th Cir. 2009) (internal quotations omitted); *see also Fiore v. Walden,* 688 F.3d 558, 575 (9th Cir. 2012) (holding, in line with *Ashcroft v. Iqbal,* 556 U.S. 663 (2009), that a court should draw only reasonable inferences from a plaintiff's pleadings in assessing personal jurisdiction).

### III. ANALYSIS

"A federal court sitting in diversity may exercise personal jurisdiction over an out-of-state defendant only to the extent that a court of the forum state could do so." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 148-49 (6th Cir. 1997); *accord SFS Check,* 774 F.3d at 356. As the United States Court of Appeals for the Sixth Circuit has noted, "[u]nder Ohio law, personal jurisdiction over non-resident defendants is available only if (1) the long-arm statute confers jurisdiction and (2) jurisdiction is proper under the Federal Due Process Clause." *Conn v. Zakharov,* 667 F.3d 705, 712 (6th Cir. 2012). Moreover, "[u]nlike other jurisdictions, Ohio does not have a long-arm statute that reaches to the limits of the Due Process Clause, and the analysis of Ohio's long-arm statute is a particularized inquiry wholly separate from the analysis of Federal Due Process law." *Id.*

**A. Securities Exchange Act**

Zobel has asserted federal securities claims over the Defendants. (Compl. ¶¶ 37, 44.) Defendant Gregory resides in Pennsylvania. (*Id.* ¶ 8.) Nationwide service of process is available

under Section 78aa of the Securities Exchange Act, which "confers personal jurisdiction in any federal district court over any defendant with minimum contacts to the United States." *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir. 1993). As a result, the exercise of personal jurisdiction over Gregory is proper.

**B. Ohio Long Arm Statute**

Ohio Rev. Code § 2307.382 provides in relevant part:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

    (1) Transacting any business in this state;
***
    (3) Causing tortious injury by an act or omission in this state;
***
    (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state . . . .

Defendants argue that jurisdiction over Contech does not immediately confer jurisdiction over the individual officers of the corporation. *See Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974). Specifically, Ohio and the Sixth Circuit both recognize the fiduciary shield doctrine, under which "if an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct." *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 697 (6th Cir. 2000); *accord Joyner v. MERS*, 451 F. App'x 505, 506 (6th Cir. 2011) (upholding district court's dismissal of complaint against CFO of corporation for lack of personal jurisdiction where plaintiff did not allege CFO "personally took any action connected" to the state). However, the Sixth Circuit has also enumerated circumstances under which the fiduciary shield doctrine does not apply—"where an out-of-state agent is actively and

5

personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on the traditional notions of fair play and substantial justice; *i.e.*, whether [the agent] purposely availed herself of the forum and the reasonably foreseeable consequences of that availment."  *Id.* at 698 (finding the district court erred in dismissing defendants from suit "based merely on the fact that they acted as agents for the corporation").  Thus, the Court must turn to a traditional due process analysis.

**B. Due Process**

The Due Process Clause requires that the nonresident defendant possessed "minimum contacts" with the forum state such that exercising jurisdiction would comport with "traditional notions of fair play and substantial justice."  *SFS Check,* 774 F.3d at 356 (citing *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945))).  In the Sixth Circuit, a three-part test assesses the existence of "minimum contacts:"

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id* (quoting *Beydoun*, 768 F.3d at 505).

**1. Purposeful Availment**

"Purposeful availment happens when the defendant personally takes actions that create a 'substantial connection' with the forum state such that he can 'reasonably anticipate being haled into court there.'"  *Id* (quoting *Neogen Corp. v. Neo Gen Screening Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985))).  The purposeful availment requirement safeguards against a defendant being haled into a jurisdiction

6

where he or she has "random," "fortuitous," or "attenuated" contacts. *Burger King*, 471 U.S. at 475. Physical contacts, however, are not necessary, as long as the commercial actor's efforts are "purposely directed" toward a resident of the forum state. *Ricker v. Fraza/Forklifts of Detroit*, 160 Ohio App. 3d 634 (Ohio Ct. App. 2005).

"[A] Defendant has purposefully availed itself of the privilege of conducting business in the forum state when the defendant transacts business by negotiating and executing a contract via telephone calls and letters to a resident of the forum state." *Intern. Content Liquidation, Inc. v. Trinitas Hospital*, No. 3:04-cv-449, 2005 WL 1892466, at *4 (Aug. 9, 2005) (citing *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998), *cert. denied*, 525 U.S. 810 (1998)). However, the contract "standing alone, will not suffice to confer personal jurisdiction over a foreign defendant. Rather, 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing … must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.'" *Nationwide Mut. Ins. Co. v. Tryg Intern. Ins. Co., Ltd.*, 91 F.3d 790, 795 (6th Cir. 1996) (quoting *Burger King*, 471 U.S. at 478-79).

In *Intern. Content Liquidation,* the court held that the defendant had purposefully availed himself of acting in Ohio by communicating via email and through phone calls in order to negotiate a contract with an Ohio resident. 2005 WL 1892466, at *4. Additionally, one of the proposed contract terms during the negotiation was the governance of Ohio law. *Id.* In contrast, courts have found limited phone contact insufficient. *SFS Check*, 774 F.3d at 356-57 (two phone calls insufficient to constitute purposeful availment). Similarly, in *Healthcare Capital, LLC v. Healthmed, Inc.*, this Court held that "numerous telephone calls, facsimiles and letters to [Plaintiff] in Ohio while negotiating the agreement that formed the basis of [Plaintiff's]

ownership of stock in [Defendant]" as well as visits to Ohio by the defendant were insufficient to constitute purposeful availment. 213 F. Supp. 2d 850, 860-62 (S.D. Ohio 2002).

Here, Zobel alleges Grambart contacted him in order to solicit interest in a position with Contech as Vice President of Sales and Marketing and to purchase stock in Contech. (Zobel Aff. ¶ 7.) Zobel then alleges that the Defendants convinced him to join the company through telephone contact and email exchanges that occurred in September and October 2013 while Zobel was in Ohio. (*Id.*) Grambart mailed a letter to Zobel's residence in Dublin, Ohio, dated October 15, 2013, on Contech letterhead, formally offering Zobel the position with the opportunity to buy stock for $200,000. (*Id.* ¶ 9; Ex. 1.) Zobel subsequently accepted the position by signing the letter-agreement on October 16, 2013 and mailing it back from Ohio. (*Id.*) On November 1, 2013, Zobel alleges he wire transferred the $200,000 from his bank in Ohio to Contech's bank account in Victoria, British Columbia, Canada to purchase 643,750 shares of Contech common stock. The stock certificate reflecting Zobel's ownership of that stock was mailed to his residence in Ohio. (*Id.* ¶ 10.)

The Court has examined the record and finds that Zobel has made a *prima facie* showing that Grambart and Contech purposefully availed themselves of acting in Ohio. *See Stolle Mach. Co., LLC v. RAM Precision Indus.*, 605 F. App'x 473, 481 (6th Cir. 2015) (finding jurisdiction where plaintiff made a *prima facie* showing that defendant caused a consequence in Ohio by injurious actions out of state). The facts here are more analogous to *Intern. Content Liquidation*, due to Grambart's telephone calls, email exchanges; and the mailing of the contract directly to Zobel in Ohio, coupled with the transmission of funds into Contech's bank account from Ohio, than to *SFS Check*, where the contact was limited to a small number of telephone calls. While the court in *Healthcare Capital* stated no purposeful availment existed, it held largely on the fact

that the defendants' conduct did not form the basis of the alleged harm, which fails to satisfy the second prong of the due process analysis, rather than the first.  213 F. Supp. 2d at 860-61.

With respect to the other defendants who are not residents of the United States—Spigelman, Heppell, Zaplatynsky, and Burman—the Court does not find a *prima facie* showing of purposeful availment.  Zobel does not specifically allege that any of these individual defendants had any contact with Ohio prior to his purchase of stock in Contech.  The general and vague assertion that "in email exchanges between Ohio and British Columbia over the next two months, the Defendants convinced me to join the company," (Zobel Aff. ¶ 7) does not establish with reasonable particularity the requisite contacts to support jurisdiction.  *See Palnik*, 344 F. App'x at 251.  Neither does Zobel's allegation that he "spoke to Defendants Gregory and Spigelman about the company" when they "knew [Zobel] lived in Ohio" and "[t]heir positive portrayal of Contech's prospects was a material reason for [his] decision to purchase Contech stock."  (Zobel Aff. ¶ 15.)  In particular, Zobel does not specify that he was in Ohio when he spoke with Gregory and Spigelman.  Moreover, even if Zobel were in Ohio at the time of these alleged calls, limited phone contact is not sufficient to constitute purposeful availment.  *SFS Check*, 774 F.3d at 356-57.

### 2. Cause of Action Arising from Activities in Forum State

The second element of the due process analysis requires that the cause of action must arise from the defendants' activities in the forum state.  *SFS Check,* 774 F.3d at 356.  The timing of the contact must have been pre-injury in order for the injury to have arisen from it.  *Id*. at 357.

In this case, Grambart and Contech's activity in Ohio was the negotiation of a purchase of stock and a contract with Zobel.  It is from the negotiation and execution of the purchase that Zobel's common law fraud inducement, federal and state recission, and state false statements

claims arise.  Therefore, the cause of action in this case arises from Grambart and Contech's activities in Ohio.  *See Intern. Content Liquidation*, 2005 WL 1892466, at \*5.

### 3. Reasonableness of Exercising Jurisdiction

The third element requires that the acts of the defendant or the consequences caused by the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.  Where the first two elements of the due process analysis are satisfied, an inference arises that the third factor is also present, thus to confer jurisdiction would be reasonable.  *Cole*, 133 F.3d at 436; *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996).

In this case, Grambart and Contech purposefully negotiated and signed a contract with a resident of Ohio, reaching into Ohio via email, telephone and mail in order to do so.  The consequences of the contractual obligation in Ohio, and the degree of interest Ohio has in seeing that the obligations were faithfully executed, satisfy the reasonableness requirement.  *See Bernie v. Waterfront Ltd. Dividend Housing Ass'n*, 614 F. Supp. 651, 655 (S.D. Ohio 1985) ("The Ohio Blue Sky laws are evidence of Ohio's interest in protecting its citizens by making certain requirements of investment arrangements before they can be distributed in Ohio."); *Martin v. Steubner*, 485 F. Supp. 88, 100 (S.D. Ohio 1979) ("it is reasonable to have expected the defendants to have contemplated that the acts culminating in the completed transaction would create a sizeable partnership interest in [plaintiff], an Ohio citizen, resulting in a continuing relationship between the defendants … and [plaintiff] in Ohio").

**C. Service of Process**

Defendants assert that service of process has not been properly effectuated over Grambart, an individual residing in Victoria, British Columbia, Canada who was served via registered mail.

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied. Service of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Under Federal Rule of Civil Procedure 4(f)(1), "an individual .... may be served at a place not within any judicial district of the United States: (1) by any internally agreed upon means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad (the "Hague Convention") of Judicial and Extrajudicial Documents. . . ." Article 10(a) of the Hague Convention provides, as long as "the State of destination does not object, the present Convention shall not interfere with-(a) the freedom to send judicial documents, by postal channels, directly to persons abroad." Hague Convention, November 15, 1965, 20 U.S.T. 361, Article 10.

District courts in the Sixth Circuit are split on the issue of whether the "freedom to send judicial documents" includes service of process. *See e.g. Humble v. Gill*, No. 1:08-cv-00166-JHM-ERG, 2009 WL 151668, at *1 (W.D. Ky. Jan. 22, 2009); *cf. Sibley v. Alcan, Inc.*, 400 F. Supp. 2d 1051, 1055 (N.D. Ohio 2005). The Court is persuaded by the reasoning employed by the Northern District of Ohio in *Sibley*. The Hague Convention's own practical handbook—authored by members elected by the signatory countries—explicitly states that Article 10(a) includes service of process. *Id.* at 1053-54; *see Practical Handbook on the Operation of the*

11

*Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*. Subsequent district courts in the Sixth Circuit have adopted *Sibley*'s reasoning in holding that Article 10(a) allows service of process on an international defendant by registered mail. *See e.g. Orms v. Takeda Pharmaceuticals America, Inc.*, No. 10-160-JMH, 2010 WL 2757760, at *2 (E.D. Ky. July 12, 2010); *Dierig v. Lees Leisure Industries, Ltd.*, No. 11-125-DLB-JGW, 2012 WL 669968, at *18 (E.D. Ky. Feb. 28, 2012); *Rae Group, Inc. v. AIESEC Intern.*, No. 08-10364, at *3 (E.D. Mich. Oct. 20, 2008). Therefore, the Court finds that Grambart was properly served.

### IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss for lack of Personal Jurisdiction and Insufficient Service of Process (the "Motion;" ECF No. 6) is **GRANTED in part and DENIED in part**. The Motion is **GRANTED** as to Defendants Burman, Zaplatynsky, Heppell, and Spigelman, who are hereby **DISMISSED** from this action. The Motion is **DENIED** as to Defendants Contech, Grambart and Gregory.

**IT IS SO ORDERED.**

_____3 - 21 -2016_____
**DATE**

_____
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT CHIEF JUDGE**